UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARDSON ET AL                    CIVIL ACTION

VERSUS                              NO: 11-2911

SERPAS ET AL                        SECTION: "J"(4)

**ORDER AND REASONS**

Before the Court are the defendants' Motion to Dismiss or, Alternatively, for Summary Judgment (Rec. Doc. 15), the plaintiffs' opposition to same (Rec. Doc. 17), and the defendants' reply (Rec. Doc. 21).  The motion is set for hearing on supporting memoranda and without oral argument.  Having considered the motion and legal memoranda, the record, and the applicable law, the Court now issues its ruling.


**PROCEDURAL HISTORY AND BACKGROUND FACTS**

This civil action arises out of an allegedly unlawful arrest lacking probable cause.  The complaint alleges the following facts.  On or about November 25, 2010, at approximately 9:30 a.m., defendant police officer Marsha Thompson was called to an

1

apartment regarding a fire that had been set on the apartment door.[1]  Officer Thompson spoke with some of the apartment's residents, including an eight-year-old boy named "O.W.," who claimed to have seen his mother set the fire at approximately 3:00 a.m. that morning.  The complaint avers that O.W. was referring to Leslie Stark, who was not O.W.'s biological mother.  Plaintiffs Jessica Richardson and Taylor Stark are Leslie Stark's daughters.[2]  Leslie Stark and Plaintiffs had previously lived with O.W. and his father for five years before the incendiary incident.[3]  However, Leslie Stark and her daughters, the Plaintiffs, had moved out of the apartment approximately three weeks prior to the incident.[4]

After arriving at the scene of the apartment fire, when Thompson spoke with O.W., the latter stated that Plaintiffs were present when their mother, Leslie Stark, started the fire.  O.W.

---

[1] Rec. Doc. 1, at 2, ¶ 7.  The fire singed and charred the door but did no major damage.  Id.

[2] The Court notes that there appears to be some confusion about whether the last name of Taylor and her mother, Leslie, is "Stark" or "Starks."  See, e.g., Rec. Doc. 1, at 2, ¶ 8 (complaint referring to Leslie Stark); Rec. Doc. 17-2, at 1 (declaration of Leslie Starks).  To the extent there is confusion, the Court notes that counsel for the parties should properly determine the actual nomenclature of Taylor and Leslie, persons who, respectively, are a party to this suit and play a role in the facts underlying this case.

[3] Rec. Doc. 1, at 2, ¶ 8.

[4] Rec. Doc. 1, at 3, ¶ 8.

did not say that Plaintiffs set the fire, but that Leslie Stark had started it.[5]  Later that same day, Thompson obtained a warrant for and arrested Leslie Stark for the crimes of simple arson and aggravated criminal damage to property under Louisiana law.[6]  Thompson secured arrest warrants for Plaintiffs Richardson and Stark on the same charges for which their mother was arrested.  To secure these warrants, Thompson submitted affidavits to the magistrate at the Criminal District Court for the Parish of Orleans.  The complaint alleges that these affidavits contained material, false information,[7] specifically, that O.W. had told Thompson that Plaintiffs were actively involved in starting the fire.[8]  On the basis of Thompson's affidavits, the magistrate signed the arrest warrants, and several weeks later, on December 17, 2010, Plaintiffs Richardson and Stark were arrested by officers of the New Orleans Police Department ("NOPD").[9]  Plaintiffs remained in jail for approximately five days, until they were released on bond.[10]

---

[5] Rec. Doc. 1, at 3, ¶ 9.

[6] Rec. Doc. 1, at 3, ¶ 10.

[7] Rec. Doc. 1, at 3, ¶ 11.

[8] Rec. Doc. 1, at 4, ¶ 12.

[9] Rec. Doc. 1, at 4, ¶¶ 13-14.

[10] Rec. Doc. 1, at 4, ¶ 16.

Subsequent investigation revealed that O.W. heard voices and had a history of starting fires.[11]

On February 28, 2011, the magistrate held a preliminary hearing in the criminal cases arising from Plaintiffs' arrests. The complaint alleges that during this hearing, Thompson admitted that she submitted knowingly false information in the affidavits in order to secure Richardson's and Stark's arrests.[12]  In light of Thompson's testimony at the hearing, the magistrate found an absence of probable cause to continue prosecution of Richardson and Stark.[13]  On or about June 22, 2011, the district attorney dismissed the charges against both Plaintiffs.[14]

Plaintiffs filed their complaint with this Court on November 22, 2011.  Named as defendants are Ronal Serpas, in his official capacity as Superintendent of the NOPD; Marsha Thompson in her individual and official capacity as an NOPD officer; and the City of New Orleans (the "City") (collectively, "Defendants").[15] Plaintiffs allege that Thompson acted intentionally and/or

---

[11] Rec. Doc. 1, at 6, ¶ 19.

[12] Rec. Doc. 1, at 4, ¶ 17.

[13] Rec. Doc. 1, at 6, ¶ 18.

[14] Rec. Doc. 1, at 6, ¶ 20.

[15] Rec. Doc. 1, at 2, ¶¶ 4-6.

maliciously to secure arrest warrants for them and alternatively that Thompson acted recklessly or negligently with regard to the truth of the affidavits.[16]  The complaint asserts that Thompson's actions violated Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution.[17]  It alleges that the City and Serpas, in his official capacity, exhibited a policy, practice, and/or custom of reckless disregard for the civil rights of Louisiana residents through failure to adequately screen, hire, train, supervise, and/or discipline employees and police officers.[18]  The complaint also alleges state-law tort claims for false arrest, assault, battery, wrongful/malicious prosecution, and intentional infliction of emotional distress ("IIED").[19]  It alleges that the City and Serpas are liable under the doctrine of *respondeat superior* for Thompson's state law torts and are liable for their failure to properly train and supervise Thompson.[20]  Plaintiffs allege that they have incurred severe mental and emotional distress for which

---

[16] Rec. Doc. 1, at 6, ¶ 21.

[17] Rec. Doc. 1, at 7, ¶ 24.

[18] Rec. Doc. 1, at 7, ¶ 25.

[19] Rec. Doc. 1, at 7, ¶ 26.

[20] Rec. Doc. 1, at 7, ¶¶ 27-28.

they should recover compensatory and punitive damages, as well as attorney's fees.[21] Defendants have filed the instant motion to dismiss, and in the alternative, for summary judgment.

### THE PARTIES' ARGUMENTS

Defendants argue that Plaintiffs' claims should be dismissed for failure to state a cause of action for which relief can be granted. Alternatively, they argue that all claims should be dismissed as Plaintiffs have failed to establish a genuine dispute of any material fact and Defendants are entitled to judgment as a matter of law. Defendants' first argument is that Plaintiffs' Section 1983 claims against the City and Serpas must be dismissed for failure to meet the requirements set forth in Monell v. Department of Social Services, 436 U.S. 658 (1978). They argue that Plaintiffs fail to plead or otherwise show that they implemented an unconstitutional policy that was the moving force behind any alleged constitutional deprivation. They argue that Plaintiffs cannot point to any specific policy, practice, or custom that they implemented that caused Plaintiffs' alleged injuries. Defendants also argue that the federal claims against them should be dismissed for the independent reason that there is

---

[21] Rec. Doc. 1, at 8, ¶¶ 30, 33.

6

no proof that they acted with deliberate indifference in allegedly failing to train or supervise Officer Thompson or that they failed to take any remedial action with deliberate indifference to the rights of the citizenry.  Furthermore, Defendants argue that Plaintiffs cannot recover punitive damages because the City is immune from punitive damages in a Section 1983 claim.

Second, Defendants argue that the federal claims against Officer Thompson should be dismissed because she is entitled to qualified immunity.  They assert that there is no genuine dispute that at the time she swore out the warrants for Plaintiffs' arrests, probable cause existed.  Defendants characterize the disputed facts alleged by Plaintiffs as immaterial, namely, that O.W. did not actually see Plaintiffs pouring liquid or lighting the fire.  They argue that there was probable cause for Thompson to reasonably believe that Plaintiffs were principals to the alleged crimes under applicable law.  Based on the totality of the circumstances, they assert that Thompson reasonably believed she had probable cause, and therefore any claim for false arrest levied against Thompson must be dismissed.

Lastly, Defendants argue that Plaintiffs fail to state a claim under Louisiana tort law.  They assert that Plaintiffs fail

to state an IIED claim because any emotional distress damages constitute an element of damages arising out of Plaintiffs' other tort claims.  Defendants assert that the negligence claim fails as a matter of law:  because Thompson acted reasonably under the circumstances, her actions are not the cause-in-fact of the resulting harm, she did not breach any duty of care, and the risk of harm was not within the scope of the duty owed to Plaintiffs.  Relatedly, Defendants argue that Plaintiffs fail to state a *respondeat superior* claim under state law as to the City and Serpas.  Defendants aver that the complaint lacks any specifics as to how the City or Serpas failed to properly train Thompson.  Therefore, Defendants argue that the tort claims fail as to each defendant.  Accordingly, Defendants move that all claims in this case be dismissed and that they receive an award of attorney's fees and costs.

As an initial matter, Plaintiffs, in their opposition memorandum, concede that they have not discovered sufficient evidence to establish a <u>Monell</u> claim against the City or Serpas.  Plaintiffs oppose Defendants' motion based on Plaintiffs' allegation that there are material facts in dispute and their argument that Thompson lacked probable cause to arrest Plaintiffs.  The essence of the opposition is that Thompson could

not have reasonably believed that there was probable cause to arrest where (1) she omitted exculpatory evidence from the affidavits, that O.W. had a history of setting fires based on hearing voices, and (2) she cut and pasted the language concerning who actually lit the fire from the Leslie Stark affidavit into the affidavits Thompson used for the Plaintiffs. As to (1), Plaintiffs aver that whether Thompson knew of this exculpatory information is a genuinely disputed fact.  With respect to (2), Plaintiffs aver that there is no genuine dispute that Thompson included false, material information in the affidavits supporting Plaintiffs' arrests.  As a result, Plaintiffs assert that they state a claim under Franks v. Delaware, 438 U.S. 154 (1978).

In conjunction with their argument concerning the Franks violation, Plaintiffs assert that the facts are insufficient to establish probable cause, for a couple of reasons.  First, both of the crimes at issue require specific intent to impose criminal liability, and the most that can be said of evidence of Plaintiffs' intent is that Plaintiffs were merely present at the crime scene.  Accordingly, they argue that Thompson lacked probable cause to believe that either plaintiff was a principal in the alleged crimes.  Second, Plaintiffs argue that significant

9

problems with O.W.'s testimony gave rise to a duty to investigate O.W.'s statements before Thompson could reasonably rely on them to swear out an arrest warrant.  Because probable cause was lacking, and because of the alleged <u>Franks</u> violation, Plaintiffs argue that the qualified immunity defense should be denied because no reasonable officer would have sought a warrant for Plaintiffs' arrests under these circumstances.

Finally, Plaintiffs argue that they have stated valid state-law tort claims against Defendants.  Concerning the negligence claim, Plaintiffs argue as follows:  Thompson's conduct was a cause-in-fact of the injuries; Thompson had a duty as a police officer sworn to uphold the law; Thompson breached her duty by causing arrests lacking probable cause; and the risk of harm was within the scope of the duty breached.  Plaintiffs argue that because Thompson was negligent, and because she acted within the course and scope of her employment when she caused the Plaintiffs' arrests, the City is liable under the theory of *respondeat superior*.  Accordingly, Plaintiffs request that the Court deny Defendants' motion.

Defendants filed a reply in which they largely reiterate arguments raised in their initial memorandum, and in which they object on evidentiary grounds to one of the exhibits attached to

Plaintiffs' opposition memorandum.  Defendants additionally argue
that the affidavits signed by Thompson were truthful.  Further,
they argue that Plaintiffs do not genuinely contend that Thompson
knew at the time she signed the affidavits of O.W.'s alleged
history of setting fires.  In support of this argument, they
point out that Thompson on at least three occasions stated that
she was not privy to this information, that there is nothing in
the police report indicating that O.W. had a history of setting
fires, and that the complaint does not allege that Leslie Stark
informed Thompson about O.W.'s history.  Accordingly, Defendants
argue that because probable cause existed for Plaintiffs' arrest,
Thompson is entitled to qualified immunity as a matter of law.


## LEGAL STANDARD

Defendants filed their motion as a motion to dismiss, but in
the alternative, for summary judgment.  The motion to dismiss is
brought pursuant to Rule 12(c).  Rule 12(c) provides that
"[a]fter the pleadings are closed—but early enough not to delay
trial—a party may move for judgment on the pleadings."  FED. R.
CIV. P. 12(c).  "A motion brought pursuant to Fed.R.Civ.P. 12(c)
is designed to dispose of cases where the material facts are not
in dispute and a judgment on the merits can be rendered by

11

looking to the substance of the pleadings and any judicially noticed facts." Hebert Abstract Co., Inc. v. Touchstone Props., Ltd., 914 F.2d 74, 76 (5th Cir. 1990). The standard for dismissal for a Rule 12(c) motion for judgment on the pleadings is the same as that for dismissal for failure to state a claim under Rule 12(b)(6). Johnson v. Johnson, 385 F.3d 503, 529 (5th Cir. 2004). However, the parties, including Defendants, refer in their memoranda to matters outside the pleadings, thus converting the motion to one for summary judgment. See FED. R. CIV. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or

weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." Delta, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." Id. at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element

13

of the nonmoving party's claim.  See Celotex, 477 U.S. at 325.
The burden then shifts to the nonmoving party, who must, by
submitting or referring to evidence, set out specific facts
showing that a genuine issue exists.  See id. at 324.  The
nonmovant may not rest upon the pleadings, but must identify
specific facts that establish a genuine issue for trial.  See,
e.g., id. at 325; Little, 37 F.3d at 1075.


                          **DISCUSSION**

**A.  Federal Claims Against Serpas and the City**

     The Supreme Court held in Monell v. Department of Social
Services of City of New York, 436 U.S. 658, 694-95 (1978) that "a
local government may not be sued under § 1983 for an injury
inflicted solely by its employees or agents.  Instead, it is when
execution of a government's policy or custom, whether made by its
lawmakers or by those whose edicts or acts may fairly be said to
represent official policy, inflicts the injury that the
government as an entity is responsible under § 1983."  Id.
Accordingly, in order for Plaintiffs' Section 1983 claims against
the City and Serpas, in his official capacity, to survive summary
judgment, Plaintiffs must at least demonstrate a genuine factual
issue concerning the existence of a City policy or custom, the

                              14

enforcement of which caused Plaintiffs' injuries.[22]   The
complaint alleges that the City and Serpas have exhibited such a
policy or custom of reckless disregard "for the civil rights of
residents like the plaintiffs" but does not allege any facts
supporting the existence of such a policy or custom.   Rec. Doc.
1, at 7, ¶ 25.   In addition to the fact that the complaint fails
to state a Section 1983 claim against these defendants under
Monell, Defendants have pointed out the absence of evidence
concerning essential elements of recovery under Monell.
Moreover, Plaintiffs have now "conceded their Monell and failure
to train claims."   Rec. Doc. 17, at 1 n.1.   Accordingly, the
Section 1983 claims against the City and Serpas must be
dismissed.

**B.   Federal Claim Against Thompson**

In order for Plaintiffs to prevail on their Section 1983
claim against Thompson, they "must allege the violation of a
right secured by the Constitution and laws of the United States,
and must show that the alleged deprivation was committed by a
person acting under color of state law."   West v. Atkins, 487

---

[22] The Section 1983 claim against Serpas, in his official capacity, is
effectively a suit against the City.   See Brown v. Strain, 663 F.3d 245, 251
(5th Cir. 2011) (suit against sheriff in his official capacity in essence a
suit against municipality); cf. Will v. Mich. Dept. of State Police, 491 U.S.
58, 71 (1989) (suit against a state official in his official capacity is
generally suit against the State itself).

U.S. 42, 48 (1988).  To meet the "under color of state law"
element, there must be a showing of "some manner of state
responsibility for the acts that underlie" the claim.  <u>Auster Oil
& Gas, Inc. v. Stream</u>, 764 F.2d 381, 387 (5th Cir. 1985).  When a
Section 1983 action is brought against a state official, the
requirement that the plaintiff prove that the defendant acted
under color of state law is coextensive with the "state action"
requirement of the Fourteenth Amendment.  <u>Lugar v. Edmondson Oil
Co., Inc.</u>, 457 U.S. 922, 924, 929 (1982).  Here, Plaintiffs
invoke Section 1983 by alleging that Officer Thompson acted under
color of state law by virtue of her law enforcement authority,
under which she caused Plaintiffs' arrest in a manner that
violated the Fourth and Fourteenth Amendments of the United
States Constitution.

    1.  **<u>Franks</u> Claim**

    Warrants may not issue absent probable cause.  U.S. CONST.
amend. IV.  The Supreme Court in <u>Franks v. Delaware</u>, 438 U.S. 154
(1978) addressed the situation in which information in an
affidavit—which establishes probable cause supporting the
issuance of a warrant—is knowingly falsely included by the
affiant.  Specifically, the Supreme Court held that a search
warrant must be voided and the fruits of the search excluded if

16

there is sufficient proof that the affiant asserted in the
affidavit a false statement that he made knowingly and
intentionally, or with reckless disregard for the statement's
truth, and if the false statement is necessary to a finding of
probable cause.  <u>Franks</u>, 438 U.S. at 156.  The Fifth Circuit has
recognized that a <u>Franks</u> violation is a Fourth Amendment
violation that states a Section 1983 claim.  <u>Hart v. O'Brien</u>, 127
F.3d 424, 442 (5th Cir. 1997), <u>abrogated</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u>
<u>Kalina v. Fletcher</u>, 522 U.S. 118 (1997).  Therefore, it is
possible for plaintiffs such as Richardson and Stark to state a
Section 1983 claim based upon an arrest effected as the result of
a <u>Franks</u> violation.

     In the record is the transcript of the preliminary hearing
in the Magistrate Section of Criminal District Court for the
Parish of Orleans in the criminal matter involving Richardson and
Stark.  Rec. Doc. 15-5.  Officer Thompson was examined in depth
at the hearing, which resulted in a finding by the presiding
commissioner of no probable cause.  On cross examination,
Thompson admitted that O.W. did not say that he had seen
Richardson or Stark put any liquid on the door, light a match,
place a match to liquid, or light the fire.  <u>Id.</u> at 8-9.
Thompson also admitted that in the affidavits she prepared, she

stated that Richardson and Stark were "observed using a clear liquid and paper ignited by a lighter to set a fire in front of the front door." Id. at 9. The court itself examined Thompson to confirm that O.W. only saw Plaintiffs' mother, Leslie Stark, set the fire. Id. at 20. In rendering its decision, the court then stated:

> The Court notes for the record that there are two arrest warrants in this file that specifically state that the defendants, Jessika Richardson and Taylor Stark, were seen pouring the liquid and lighting the fire. That's the allegation in the arrest warrant, however, the testimony today clearly shows that it was their mother that was seen pouring the gas and lighting the fire.

Id. at 23-24. The court then found that "once you take away these two arrest warrants" indicating participation by Plaintiffs in setting the fire, there was no probable cause with respect to Plaintiffs. Id. at 24-25.[23] The transcript of the detention hearing is evidence that Thompson included false information in the affidavits with knowledge of the falsity of the information. This evidence makes a *prima facie* showing of a <u>Franks</u> violation, and Defendants do not rebut this showing with any competent

---

[23] The court noted that the fact that the two young Plaintiffs were near their mother at the time of the act did not indicate that they were aiding, abetting, or participating. Rec. Doc. 15-5, at 24. Both Plaintiffs were "well within the age to still be controlled by their mother." Id. at 24-25.

evidence of their own.[24]

Additionally, there is a genuine dispute of fact regarding whether Thompson knowingly omitted material information from the affidavits.  The Fifth Circuit has stated that a deliberate or reckless *omission* of material that results in the issuance of a warrant without probable cause may state a <u>Franks</u> claim. <u>Michalik v. Hermann</u>, 422 F.3d 252, 258 (5th Cir. 2005) (citing <u>Hart</u>, 127 F.3d at 448).  There is evidence in the record that O.W. had a history of starting fires and hearing voices telling him to do so.[25]  Plaintiffs assert that Thompson was aware of

---

[24] The Court is not persuaded by Defendants' several arguments to the contrary.  First, they argue that because Thompson believed Plaintiffs' presence at the scene made them principals to the crime, her wording of the affidavits was reasonable.  This is incorrect.  That O.W. stated that Plaintiffs were present did not justify Thompson's averment that they actually lit the fire.  Second, Defendants points out that Plaintiffs did not help put out the fire.  This argument fails for the same reason.  Third, Defendants point to Thompson's testimony that she "could have put the words figuratively instead of literally" in the affidavits.  Whatever this might mean, if it means anything, it does not change the fact that Thompson made knowingly false statements.  Finally, Defendants suggest that the affidavits were truthful because Thompson believed that they contained true information.  If she subjectively believed that the information was true, this was at least reckless disregard for the truth, where she admitted at the hearing that O.W. did not tell her that he saw Plaintiffs either pour liquid or actually start the fire.

[25] <u>See</u> Rec. Doc. 17-2, at 1, ¶¶ 4-5 (declaration of Leslie Stark that in approximately May 2010, O.W. began getting in trouble for lighting fires, both at school and at home, and that she took O.W. to a counselor at the Louisiana Office of Mental Health, where O.W. told a counselor that he had heard voices); Rec. Doc. 17-3, at 2 (Louisiana Office of Mental Health, Child - Adolescent Response Team Safety Plan recording that O.W. informed counselor that he had started fires, or at least attempted to start them, and that he heard a "bad side" voice telling him to start fires).  Defendants argue that the latter document is irrelevant and inadmissible hearsay.  It is relevant to the extent it is evidence of O.W.'s past conduct.  Even to the extent the document does not fall under the "business records" hearsay exception, there

this when she signed the affidavits for their arrest.  Thompson,
in her deposition, testified that Leslie Stark did not inform
Thompson that O.W. had heard voices and started fires at his
house and at his school in the several weeks preceding the
incident.  Rec. Doc. 17-5, at 4-5.  However, there is record
evidence that Thompson did have this information, yet omitted it
from the affidavits, per the declaration of Leslie Stark.[26]  As a
result, there is *prima facie* evidence of a <u>Franks</u> violation based
upon Thompson's deliberate or reckless omission of material from
the affidavits, which if fictitiously included in the affidavits
under a <u>Franks</u> analysis would likely negate probable cause.

In summary, there is evidence that a <u>Franks</u> violation
occurred in that (1) there is evidence (not *genuinely* contested)

---

is other evidence in the record of O.W.'s prior history, in the form of Leslie
Stark's affidavit.

[26] <u>See</u> Rec. Doc. 17-2, at 2, ¶¶ 9-10 (declaration of Leslie Stark that
on date of incident, Officer Thompson called her to the police station, that
she met with Thompson there, and that she informed Thompson that O.W. had a
history of starting fires and hearing voices).  Defendants suggest that this
does not create a genuine issue of fact.  In support of this argument, they
point out that Thompson on at least three occasions stated that she was not
privy to this information, that there is nothing in the police report
indicating that O.W. had a history of setting fires, and that the complaint
does not allege that Leslie Stark informed Thompson about O.W.'s history.
First, that Thompson on several occasions made assertions contrary to Leslie
Stark's declaration creates "the classic 'he said, she said' swearing match"
that prevents a grant of summary judgment.  <u>See</u> <u>Faulkenbery v. Lee</u>, 307 F.
App'x 813, 814 (5th Cir. 2009).  Second, that the complaint does not
specifically allege this fact and that the police report does not contain
evidence supporting Plaintiffs' contention do not change the fact there is
record evidence supporting Plaintiffs' contention.

that Thompson included knowingly false information about O.W.'s
allegations in the affidavits, and (2) there is a genuine dispute
concerning whether Thompson knew of O.W.'s history of starting
fires, which information was omitted from the affidavits.
Accordingly, the Court must excise the included false information
and insert the omitted information in determining whether there
is a genuine issue regarding whether probable cause existed, such
that a reasonable officer knowing what Thompson knew would have
sworn her affidavits.  See Freeman v. Cnty. of Bexar, 210 F.3d
550, 553 (5th Cir. 2000) (on summary judgment, court "must
disregard any such properly contested statements in the
affidavits and then determine whether the warrant would establish
probable cause without the allegedly false information," and
plaintiff had to "demonstrate an issue of material fact as to
whether any reasonably competent officer possessing the
information that each officer had at the time he swore his
affidavit could have concluded that a warrant should issue").  In
light of this reconstruction of the affidavits made necessary by
Thompson's Franks violation, the Court turns to the issue of
whether she had probable cause to seek to arrest Plaintiffs
Richardson and Stark.

21

2.   **Probable Cause**

Probable cause is defined as reasonable grounds for belief in guilt.  <u>Brinegar v. United States</u>, 338 U.S. 160, 175 (1949). It exists "where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."  <u>Id.</u> at 175-76 (quotation marks and citation omitted).  The Court must consider the totality of the circumstances.  <u>Freeman</u>, 210 F.3d at 553.  As previously explained, an important component of the probable cause inquiry in this case is (1) excision from the affidavits the allegation that Plaintiffs poured liquid and lit the fire, and (2) because there is a genuinely disputed fact whether the omitted information was available to Thompson, insertion into the affidavits the information that O.W., the sole eyewitness to the crime, was an eight-year-old boy who had set several fires in the months preceding the apartment fire in question and who claimed to hear voices telling him to start such fires.

The Court also considers the totality of all other circumstances known to Thompson at the time she swore out the affidavits.  These circumstances include a number of facts that

22

may or may not ultimately have any probative value concerning the probable cause inquiry:  O.W.'s allegation that Plaintiffs were present with Leslie Stark at the time the fire was kindled, Lashondra Fefie's[27] statement that Leslie Stark had been harassing Fefie and previously had come to the apartment to start a fight,[28] and Fefie's claim to have spoken with a neighbor who saw three unknown females setting the fire and who subsequently extinguished the fire.[29]  Looming large is the circumstance—the parties dispute whether Thompson knew about it—that the lone eyewitness, O.W., had a prior history of starting fires and hearing voices, which posed a glaring credibility problem.

Both crimes for which Plaintiffs were arrested require intent to cause damage to property.  See LA. REV. STAT. § 14:52(A)(1) (defining simple arson as the "*intentional* damaging" of property by explosive substance or fire) (emphasis added)[30];

---

[27] Fefie became the new girlfriend of Antoine White, O.W.'s father and a resident of the apartment, in connection with White's jilting of Leslie Stark. See Rec. Doc. 15-4, at 7 (NOPD voluntary statement form filled out by Fefie).

[28] Rec. Doc. 15-6, at 2, ¶ 14 (Thompson's affidavit); Rec. Doc. 15-4, at 7 (NOPD voluntary statement form filled out by Fefie).

[29] Rec. Doc. 15-3, at 5 (NOPD incident report narrative).

[30] Another subsection of the statute does not require intent.  Namely, if the fire or explosion commences while the offender perpetrates another felony, the offender may be guilty of simple arson.  LA. REV. STAT. § 14:52(A)(2).  However, there is no indication whatsoever of the existence of any other applicable felony except for aggravated criminal damage to property, which does require intent.  See LA. REV. STAT. § 14:55.

23

LA. REV. STAT. § 14:55 (defining aggravated criminal damage to
property as the "*intentional* damaging" of property where it is
foreseeable that human life might be endangered, by any means
other than fire or explosion) (emphasis added).[31]  As a result,
Thompson needed probable cause to believe that Plaintiffs had the
requisite mental state to commit the alleged crimes.  Without the
benefit of the excised, false suggestion that O.W. stated that he
saw Plaintiffs light the fire, the Court is left with Plaintiffs'
mere presence at the crime scene, which weighs against a finding
that an officer in Thompson's position could have reasonably
believed that Plaintiffs intended damage to the apartment or
other property.  See State v. Pierre, 93-K-0893 (La. 2/3/94); 631
So. 2d 427, 428 ("Mere presence at the scene is therefore not
enough to 'concern' an individual in the crime," for the purpose
of establishing that an individual was a principal in a criminal
offense).

Additionally, based on the factual dispute concerning
Thompson's alleged knowledge of the omitted exculpatory
information concerning O.W.'s incendiary past which is imputed to

---

[31] The Court notes that it is hard to fathom how Thompson could have had
probable cause to arrest anyone for aggravated criminal damage to property
concerning the fire at issue, where the statute defining the offense states
that it applies to damage "by any means *other than fire* or explosion."  LA.
REV. STAT. § 14:55 (emphasis added).

the affidavits that Thompson signed, a reasonable officer would have been on notice of a cause for doubting that Plaintiffs perpetrated the alleged crimes.  Namely, the testimony of the lone eyewitness, on which Thompson heavily relied, suffered from the fact that said eyewitness had a history of engaging in the fire-starting conduct of which he accused Plaintiffs and their mother.  This circumstance would cause a reasonable officer to question the eyewitness's credibility.  See United States v. Blount, 123 F.3d 831, 836 (5th Cir. 1997) ("[W]hen an average citizen tenders information to the police, the police should be permitted to assume that they are dealing with a credible person in the absence of special circumstances suggesting that such might not be the case.") (quotation marks and citation omitted). As a result, there is at least a genuine dispute that probable cause was lacking at the time Thompson signed the affidavits.[32] Because of this genuine dispute, there is necessarily a genuine dispute regarding whether Plaintiffs suffered a violation of their right under the Fourth Amendment to be free from unreasonable seizures.  As a result, the Court finds that, absent

---

[32] If underlying facts are undisputed, probable cause is a question of law.  Blackwell v. Barton, 34 F.3d 298, 305 (5th Cir. 1994).  However, if the facts are disputed, probable cause may be a mixed question of fact and law. See New v. Fleming, 170 F. App'x 298, 300 (5th Cir. 2006) (where material fact issues existed regarding probable cause, genuine factual dispute remained regarding qualified immunity).

any applicable defense, Plaintiffs' Section 1983 claim against
Thompson based on the Fourth Amendment survives summary judgment.

### 3. Qualified Immunity

Notwithstanding that Plaintiffs state a claim against
Thompson, which survives summary judgment, for a violation of
their Fourth Amendment right based on arrests made without
probable cause, Defendants argue that the Section 1983 claim
fails because Thompson is entitled to qualified immunity.  The
Fifth Circuit has set out the test for establishing a defense
based on qualified immunity:

> Evaluating qualified immunity is a two-step process.
> First, we determine whether the plaintiff has alleged a
> violation of a clearly established constitutional or
> statutory right. A right is clearly established if its
> contours are sufficiently clear that a reasonable
> official would understand that what he is doing
> violates that right. If the plaintiff has alleged a
> violation of a clearly established right, the next step
> for us is to determine whether the official's conduct
> was objectively reasonable under the law at the time of
> the incident. The plaintiff bears the burden of proving
> that a government official is not entitled to qualified
> immunity.

Michalik, 422 F.3d at 257-58 (quotation marks and citations
omitted).  With respect to the first prong, a violation of the
Fourth Amendment guarantee against unreasonable seizures
implicates a clearly established right.  Evett v. DETNTFF, 330
F.3d 681, 687 (5th Cir. 2003); see also Mangieri v. Clifton, 29

F.3d 1012, 1016 (5th Cir. 1994) ("The right to be free from arrest without probable cause is a clearly established constitutional right.").  Because there is a genuine legal contention that probable cause was lacking when Thompson swore out the affidavits on which Plaintiffs' arrests were based, Plaintiffs validly claim that Thompson violated their clearly established constitutional rights.

The second prong of the qualified immunity inquiry is whether Thompson's conduct was objectively reasonable.  First, even if, in a vacuum, an officer with knowledge of the information alleged in the affidavits at issue could have reasonably believed that probable cause existed, Thompson acted unreasonably in deliberately or recklessly making false statements and allegedly omitting material information from the affidavits.  Therefore, the qualified immunity defense fails as to any liability based upon Thompson's false averment or allegedly reckless omission.  Second, based on the genuine dispute of whether Thompson knew about O.W.'s history of setting fires and hearing voices, there is a genuine dispute concerning whether Thompson could have reasonably believed that probable cause for arresting Plaintiffs existed at the time Thompson

signed the affidavits.[33]   Although qualified immunity requires an

objective inquiry, it is notable that Thompson testified that if

she had known that O.W. had a history of starting fires and

hearing voices, absent another witness coming forward with proof

that Plaintiffs had participated in the incident, she probably

would not have sought arrest warrants for Plaintiffs.   Rec. Doc.

17-5, at 7-8.   The Court holds that Thompson is not entitled to

dismissal of Plaintiffs' Section 1983 claim based upon qualified

immunity.

## C. State Law Claims Against Thompson

Plaintiffs have alleged several tort theories under

Louisiana law.   Concerning the state law IIED claim, Defendants

argue that any emotional distress damages are an element of

damage arising out of Plaintiffs' other tort claims.   Plaintiffs

---

[33]      When an individual asserts a claim for wrongful
        arrest, qualified immunity will shield the defendant
        officers from suit if a reasonable officer could have
        believed [the arrest at issue] to be lawful, in light
        of clearly established law and the information the
        [arresting] officers possessed. Even law enforcement
        officials who reasonably but mistakenly conclude that
        probable cause is present are entitled to immunity.
        Thus, a qualified immunity defense cannot succeed
        where it is obvious that a reasonably competent
        officer would find no probable cause. On the other
        hand, if officers of reasonable competence could
        disagree on this issue, immunity should be recognized.

Mendenhall v. Riser, 213 F.3d 226, 230-31 (5th Cir. 2000).  Because the
information that Officer Thompson possessed is genuinely disputed, it cannot
be said as a matter of law that she reasonably believed that probable cause
existed.

concede that their emotional distress claim "is more appropriately treated as an element of damages on the false arrest/imprisonment/malicious prosecution claim." Rec. Doc. 17, at 1 n.1. In light of this concession, the Court agrees that dismissal of the IIED claim is appropriate. See Kelly v. West Cash & Carry Bldg. Materials Store, 99-CA-0102 (La. App. 4th Cir. 10/20/99); 745 So. 2d 743, 760 (where any emotional distress damages plaintiff experienced would have ben an element of damage arising from claims for false imprisonment and arrest, defamation, and malicious prosecution; and where the emotional distress alleged under the facts presented did not give rise to separate cause of action; there was no need to consider IIED claim separately).

Defendants maintain that the negligence claim fails as a matter of law. Generally, a negligence claim against a police officer proceeds under Louisiana's duty-risk analysis. Hardy v. Bowie, 98-CC-2821 (La. 9/8/99); 744 So. 2d 606, 613. The duty-risk analysis requires the plaintiff to prove that "the conduct in question was a cause-in-fact of the resulting harm, the defendant owed a duty of care to plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of protection afforded by the duty breached." Id.

There is a factual dispute as to whether Thompson acted reasonably in seeking Plaintiffs' arrests, and thus whether Thompson breached a duty to Plaintiffs.  The risk of the harm flowing from an allegedly unlawful arrest was within the scope of an officer's duty not to unlawfully arrest the citizenry.  The cause-in-fact standard is met because but-for Thompson's signing of the affidavits at issue, Plaintiffs more likely than not would not have been arrested and suffered the emotional injuries and financial damage that they allege.[34]  The negligence claim against Thompson survives summary judgment.

Defendants appear to move for the dismissal of all remaining tort causes of action, as well.[35]  With respect to the malicious prosecution claim, Thompson's affidavit states that prior to the date of the fire, she did not know Plaintiffs, and that she did not apply for arrest warrants for them for revenge, for personal gain or advantage, or to cause injury or harm.  Rec. Doc. 15-6, at 3, ¶¶ 18-19.  However, there was at least reckless disregard for the truth exhibited by Thompson's averment in the affidavits

---

[34] See Rec. Doc. 1, at 8, ¶¶ 30-32 (alleging as damages severe mental and emotional distress, payment to a bondsman to secure release from wrongful incarceration, and payment of an attorney to defend Plaintiffs against wrongful charges).

[35] See Rec. Doc. 15-1, at 21-22 ("Plaintiffs have failed to show that they were assaulted, battered, suffered emotional or mental distress and intentional malicious prosecution.").

that Plaintiffs started the fire.  Such reckless disregard
constitutes malice.  <u>Aucoin v. Aetna Cas. & Sur. Co.</u>, 520 So. 2d
795, 798 (La. App. 3d Cir. 1987).  Furthermore, the assault,
battery, and other tort claims survive summary judgment because
Defendants make no substantive arguments for their dismissal, and
therefore do not point out the absence of evidence to support
these claims.  <u>See</u> <u>Celotex</u>, 477 U.S. at 325 (the moving party may
satisfy its burden by "*pointing out*" that the evidence in the
record is insufficient with respect to an essential element of
the nonmoving party's claim) (emphasis added).[36]

## D. State Law Claims Against Serpas and the City

Under Louisiana law, an employer is vicariously liable "for
a tort committed by his employee if, at the time, the employee
was acting within the course and scope of his employment."
<u>Baumeister v. Plunkett</u>, 95-C-2270 (La. 5/21/96); 673 So. 2d 994,
996.  Defendants do not dispute that Thompson was acting within
the course and scope of her employment with NOPD in investigating
the underlying criminal case against Plaintiffs.[37]  Therefore,

---

[36] Defendants merely allege that "Plaintiffs have failed to show" that a
tort occurred.  Rec. Doc. 15-1, at 21-22.  This does not constitute an attempt
to point out how the elements of the tort theories alleged fail as a matter of
law.

[37] <u>See</u> Rec. Doc. 15-1, at 24 (Defendants' memorandum acknowledging that
Plaintiffs allege that Thompson acted within the course and scope of her
employment, and not contesting this assertion, but rather stating that the

the claims against Serpas and the City based on the doctrine of *respondeat superior* survive summary judgment.  Defendants also argue that the complaint lacks specific facts as to how the City and Serpas failed to properly train Officer Thompson.  However, as previously explained, because Defendants' Rule 12(c) motion is converted a Rule 56 motion for summary judgment, it is appropriate to address the failure-to-train negligence claim against Serpas and the City under the latter standard.[38] Defendants have not pointed out any insufficiency of evidence concerning the state law failure-to-train claim, and thus it will not be dismissed on summary judgment.


## CONCLUSION

To borrow a line from Billy Joel, Plaintiffs' tune of "We didn't start the fi-re" strikes a chord that at least resonates beyond summary judgment.

For all of the foregoing reasons, **IT IS ORDERED** that the Motion to Dismiss or, Alternatively, for Summary Judgment (Rec. Doc. 15) is **DENIED IN PART and GRANTED IN PART**.  It is only

---

tort claim is without merit because Thompson was not negligent).

[38] See Rec. Doc. 1, at 7, ¶¶ 27-28 (alleging that the City and Serpas are liable both under the doctrine of *respondeat superior* and for failing to properly train and supervise Thompson).

granted to the extent that the claims for intentional infliction of emotional distress against all Defendants, and the Section 1983 claims against the City of New Orleans and Ronal Serpas, in his official capacity, are **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, this 24th day of May, 2012.

_____

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE